**In re SECRETARY OF the DEPARTMENT OF CRIME CONTROL AND PUBLIC SAFETY; State of North Carolina, ex rel; Lacy H. Thornburg, Attorney General of North Carolina, Appellants,**

**Richard Wayne BARFIELD, Plaintiff–Appellee,**

v.

**Geary BLACKWOOD, Defendant–Appellee.**

**No. 92–1339.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 30, 1992.

Decided Oct. 26, 1993.

William Dale Talbert, Isaac T. Avery, III, Sp. Deputy Attys. Gen., North Carolina Dept. of Justice, Raleigh, NC, argued (Lacy H. Thornburg, Atty. Gen., Linda Anne Morris, Asst. Atty. Gen., North Carolina Dept. of Justice, of counsel), for appellants.

Richard Brooks Glazier, Beaver, Holt, Richardson, Sternlict, Burge & Glazier, P.A., Fayetteville, NC, argued (H. Gerald Beaver, Mark A. Sternlicht, James R. Parish, of counsel), for appellee.

Before WIDENER, PHILLIPS, and HAMILTON, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of North Carolina directing the State of North Carolina, through its Secretary of Public Safety and Crime Control, to pay a portion of a money judgment rendered in a § 1983 action against a former state employee in his individual capacity. Because we conclude that the § 1983 claimant's efforts to enforce in federal court any obligation that the State may have to pay this judgment is barred by the Eleventh Amendment, we reverse.

### I

Richard W. Barfield, a citizen of the State of North Carolina, brought this action under 42 U.S.C. § 1983 against Geary Blackwood, a former member of the North Carolina State Highway Patrol, alleging that Blackwood had violated his federal constitutional rights by using excessive force to arrest him. Though the complaint alleged that the incident had occurred while Blackwood was on duty as a highway patrolman, it sought relief against Blackwood in his individual capacity only, and did not name as a defendant either the state agency which had employed Blackwood (the North Carolina Department of Crime Control and Public Safety) or the State of North Carolina itself.

By consent of the parties, the case was tried to a jury before a United States magistrate judge. The jury returned a verdict of $500,000 for Barfield, and the district court entered an appropriate judgment against Blackwood in his individual capacity. Barfield attempted to execute this judgment against Blackwood, but the execution was returned unsatisfied.

Barfield then applied to the clerk of the district court for issuance of a writ of execution against the Secretary of the North Carolina Department of Public Safety and Crime Control ("the Secretary"). Barfield's request was based on two provisions of the North Carolina General Statutes which require the State to indemnify state employees against certain liabilities incurred in the course of

their state employment, and a document in which Blackwood purported to assign to Barfield all claims and causes of action that he might have against the State for its failure or refusal to pay the judgment rendered against him in this action. The clerk refused to issue the writ on the ground that North Carolina law, which governs the procedure in execution of the judgment under Fed.R.Civ.Proc. 69, does not permit the issuance of a writ of execution against a non-party.

Barfield next moved the district court to enforce the judgment against the Secretary through proceedings supplementary to execution, pursuant to Fed.R.Civ.Proc. 69(a) and incorporated state law. The Secretary moved to dismiss these supplementary proceedings, contending, *inter alia*, that the Eleventh Amendment prevented a federal court from ordering the Secretary to pay the judgment out of state funds. The district court referred these motions to the magistrate judge.

The magistrate judge entered an order directing the Secretary, on behalf of the State, to pay Barfield $100,000 toward the judgment, "plus such amount of commercial liability insurance coverage as is within policy limits and the judgment award." The magistrate judge reasoned that North Carolina law obligated the State to pay Barfield up to $100,000 in satisfaction of this judgment, and that the statutes creating that payment obligation waived the State's Eleventh Amendment immunity to the extent necessary to permit its enforcement in federal court. The magistrate judge also held that "[t]o the extent that this waiver of [Eleventh Amendment] immunity triggers commercial liability coverage, plaintiff is also entitled to collect those amounts within policy limits and the judgment award."

The Secretary filed objections to the magistrate judge's order with the district court, renewing his claim that the Eleventh Amendment prevented a federal court from ordering him to pay all or part of this judgment on behalf of the State. At the same time, the State moved to intervene in this action, both as of right and permissively, for the limited purpose of contesting the district court's jurisdiction to enter an order directing it to pay this judgment.

The district court granted the State's motion to intervene as of right pursuant to Fed.R.Civ.Proc. 24(a), concluding that the State had an interest in the funds in question, that the disposition of the action would as a practical matter impair its ability to protect that interest, and that the Secretary might not adequately represent its interests in asserting its Eleventh Amendment immunity and avoiding the wrongful expenditure of state funds.

The district court agreed with the magistrate's conclusion that under North Carolina law, the State was required to pay Barfield up to $100,000 in satisfaction of this judgment, and that the State had waived its Eleventh Amendment immunity to the extent necessary to permit Barfield to enforce that obligation in federal court. The court then held that Barfield could assert his claim against the State in a Rule 69 proceeding supplementary to this action. Accordingly, the court entered an order directing the State and the Secretary to permit Barfield to collect $100,000 "from the State of North Carolina in satisfaction of plaintiff's judgment against defendant." The court's order also provided that "[t]o the extent that the State's waiver of [Eleventh Amendment] immunity triggers commercial liability coverage, plaintiff is also entitled to collect these amounts within the policy limits and the judgment award."

The State and the Secretary (collectively, "the state defendants") now appeal.

## II

The state defendants argue principally that the district court lacked jurisdiction to entertain Barfield's claim against the Secretary.[1]

---

1. The State Defendants also urge reversal on the ground that under North Carolina law, the State had no obligation to pay any part of this judgment, or at least no obligation that could be enforced by Barfield. This argument raises some rather difficult issues of state law, as to which we have little concrete guidance from the state courts. But we need not resolve them to decide this case, because we conclude that even if the district court was correct that state law gives

They make two separate jurisdictional arguments, one based on Article III, the other on the Eleventh Amendment. We take these in turn.

### A.

The state defendants argue that, quite apart from any limitations imposed by the Eleventh Amendment, the district court lacked jurisdiction under Article III itself to entertain Barfield's claim against the Secretary. Though their argument is a bit hard to follow, it seems to go like this. Barfield's claim against the Secretary, which is based wholly on state law, is really one against the State itself. There is no independent basis for federal jurisdiction over this claim, because Article III § 2 does not include state-law claims brought against a state by one of its own citizens in the list of "cases or controversies" to which the federal judicial power extends. While federal courts may sometimes entertain such claims under their ancillary or pendent jurisdiction, this is not a proper case for the exercise of that jurisdiction. Accordingly, the claim must be dismissed for lack of jurisdiction under Article III, without regard to whether the State has waived its Eleventh Amendment immunity.

█ The state defendants' argument is not insubstantial. There plainly is no *independent* basis for federal jurisdiction over Barfield's claim against the Secretary, as it is a state-law claim that does not fall within the diversity jurisdiction. The district court apparently thought that it could entertain the claim under either its "pendent" jurisdiction to hear nonfederal claims closely related to

Barfield's § 1983 claim against Blackwood or its "ancillary" jurisdiction to enforce its own judgments. But it is not at all a sure thing that Barfield's state-law claim against the Secretary would have fallen within either of these supplemental jurisdictions.[2] We need not resolve this question to decide this case, however, because we conclude that even assuming, *arguendo*, that Barfield's claim against the Secretary might otherwise have fallen within the district court's ancillary or pendent jurisdiction, the Eleventh Amendment deprived the district court of jurisdiction to entertain that claim, because it was in effect a claim against the State itself. As the Supreme Court has explained, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment," and "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). *See County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 251, 105 S.Ct. 1245, 1260, 84 L.Ed.2d 169 (1985) ("The Eleventh Amendment forecloses ... the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State"); *Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) (Eleventh Amendment applies even where basis for jurisdiction is "ancillary and supplemental").

### B.

█ We turn therefore to the Eleventh Amendment issue, which we think ultimately

---

Barfield a valid claim against the State for satisfaction of all or part of this judgment, the Eleventh Amendment forbids the federal courts to entertain that claim.

**2.** Barfield's claim against the Secretary is a state-law claim against a new defendant, over whom there is no independent basis for federal jurisdiction. In 1989, the Supreme Court sharply limited the circumstances in which federal courts may invoke their pendent jurisdiction—and possibly their ancillary jurisdiction, as well—to entertain such claims. *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Congress overruled *Finley* in the Judicial Improvements Act of 1990, which amended Title 28 to explicitly authorize the exercise of

such "pendent party jurisdiction" under the new label of "supplemental" jurisdiction. Pub.L. 101–650, Title III, § 310(a) (Dec. 1, 1990) (codified at 28 USC § 1367). But the Act by its own terms applies only to actions commenced on or after Dec. 1, 1990, Pub.L. 101–650, § 310(c), and this action was filed in 1986. Accordingly, *Finley* is controlling here. Under *Finley,* we think there is a substantial question whether the district court could properly have invoked either its pendent jurisdiction or its ancillary jurisdiction to entertain Barfield's state-law claim against the Secretary. *See generally* 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3567.2 (Supp.1993).

dispositive here. The Eleventh Amendment generally deprives the federal courts of jurisdiction to hear actions for money damages brought against a State by its own citizens or by citizens of another state. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). The claim that Barfield seeks to assert against the Secretary here is a claim against the State itself for purposes of the Eleventh Amendment, as it is directed to the Secretary in his official capacity and asks him to pay out funds from the State treasury as retroactive relief for a past wrong. *See Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants"); *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355 ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"). As such, it is barred by the Eleventh Amendment, absent a showing that the State has waived its Eleventh Amendment immunity or that Congress has abrogated that immunity. *See County of Oneida,* 470 U.S. at 250–53, 105 S.Ct. at 1259–62 (finding defendants' cross-claim against State to enforce indemnification obligation arising wholly from state law to be barred by Eleventh Amendment). We can find neither waiver nor abrogation here.

■ A State may waive its Eleventh Amendment immunity either expressly in a statutory or constitutional provision, *see Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 & n. 1, 105 S.Ct. 3142, 3145 & n. 1, 87 L.Ed.2d 171 (1985), or "implicitly," by voluntarily participating in a federal program when Congress has expressly conditioned state participation in that program on the state's consent to suit in federal court, *see id. See generally Westinghouse Elec. Corp. v. West Virginia Dept. of Highways,* 845 F.2d 468, 470 (4th Cir.1988), *cert. denied,* 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988).

There is no allegation of the latter sort of waiver here, nor could there be. But the magistrate judge held that the statutory provisions that give rise to the State's alleged obligation to pay this judgment constitute an express waiver of the State's Eleventh Amendment immunity, to the extent necessary to permit enforcement of that obligation in federal court.

The district court adopted that ruling, and the state defendants contend that it erred in doing so. We agree that it did so err.

■ The Supreme Court repeatedly has admonished that "[t]he test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. at 3146. A state statutory or constitutional provision will be found to constitute a waiver of Eleventh Amendment immunity only when it " 'specif[ies] the State's intention to subject itself to suit in federal court' " in " 'the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.' " *Feeney,* 495 U.S. at 305–06, 110 S.Ct. at 1872–73 (quoting *Atascadero State Hosp.,* 473 U.S. at 239–41, 105 S.Ct. at 3145–47).

The magistrate judge based his finding of express waiver on the provisions of Article 31A of Chapter 143 of the North Carolina General Statutes, N.C.Gen.Stat. §§ 143–300.2 *et seq.* He relied primarily upon N.C.Gen. Stat. § 143–300.6(a), which provides, in pertinent part, that:

> All final judgments awarded in courts of competent jurisdiction against State employees in actions or suits to which this Article applies ... shall be paid by the department, agency, board, commission, institution, bureau or authority which employs or employed the State employee. Nothing in this section shall be deemed to waive the sovereign immunity of the State with respect to a claim covered by this section. No payment of a judgment or settlement of a claim against a State employee or several State employees as joint tort-feasors shall exceed the amount pay-

able for any one claim under the Tort Claims Act.

The magistrate judge also cited N.C.Gen. Stat. § 143–300.3, which indicates that the phrase "actions or suits to which this Article applies" in § 143–300.6(a) means "any civil or criminal action or proceeding brought against [a state employee or former state employee] in his official or individual capacity, or both, on account of an act done or omission made in the scope and course of his employment as a State employee," and N.C.Gen.Stat. § 143–300.2(1), which defines the phrase "civil or criminal action or proceeding" in § 143–300.3 to include "any case, prosecution, special proceedings, or administrative proceeding in or before any court of this State or any other state or the United States." The magistrate judge concluded from these provisions, read together, that § 143–300.6(a), as clarified by § 143–300.3 and § 143–300.2(1), not only obligates the State to pay judgments rendered against state employees or former state employees on account of acts or omissions done in the course and scope of their state employment, but also waives the State's Eleventh Amendment immunity with respect to actions seeking to enforce that obligation against it.

▆▆▆ In this analysis, the magistrate judge overlooked a critical point about Article 31A: the absence of any language expressly indicating that the State intends to subject itself to suit, which is the most fundamental requirement for a waiver of Eleventh Amendment immunity. *See Feeney*, 495 U.S. at 306, 110 S.Ct. at 1873 ("in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention *to subject itself to suit*") (emphasis added) (internal quotations omitted); *Edelman*, 415 U.S. at 674, 94 S.Ct. at 1360 (statute which "by its terms did not authorize suit against anyone" could not waive Eleventh Amendment immunity). Nothing in the language of § 143–300.6(a) itself indicates that the State is consenting to suits against anyone for anything; it says only that the State will pay judgments awarded by "courts of competent jurisdiction" in certain suits brought against state employees. To be sure, the other provisions of Article 31A suggest that § 143–300.6(a) requires the State to pay judgments entered in certain official-capacity actions against its employees, which are in effect actions against the State itself. *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). But the express language of § 143–300.6(a) makes absolutely clear that by agreeing to pay such judgments, when and if they are validly entered by "courts of competent jurisdiction," the State does not intend to waive any underlying defense of sovereign immunity—either common law or constitutional—that it might assert to avoid entry of such judgments in the first place.[3] And we see nothing in the text of Article 31A that fairly can be read as an expression of the State's consent to suits against itself in federal court to enforce the payment obligation created by § 143–300.-6(a), much less the "unequivocal" expression of such consent required by the Supreme Court's Eleventh Amendment jurisprudence. *See Atascadero State Hosp.*, 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1. Indeed, the statute says nothing whatsoever about how that obligation is to be enforced against the State. For this most basic reason, we think the magistrate judge erred in finding that the State had waived its Eleventh Amendment immunity with respect to any obligation it might have to pay this judgment.[4]

---

3. Section 143–300.6(a) explicitly states that "[n]othing in this section shall be deemed to waive the sovereign immunity of the State with respect to a claim covered by this section." The obvious purpose of this sentence is to make clear that the State does not intend § 143–300.6(a) to be interpreted as a waiver of its sovereign immunity with respect to official-capacity suits against its employees, but simply as an agreement to pay judgments validly entered in any such actions that are, for some independent reason, not barred by its sovereign immunity.

4. In urging us to find a statutory waiver of Eleventh Amendment immunity, Barfield also cites N.C.Gen.Stat. § 20–194(b), which provides in pertinent part that:

> In the event that a member of the Highway Patrol or other State law-enforcement officer is sued in a civil action as an individual for acts occurring while such member was alleged to be acting within the course and scope of his office, employment, service, agency or authority, which was alleged to be a proximate cause of the injury or damage complained of, ... [a]ny judgment rendered as a result of said

It is true that a waiver of Eleventh Amendment immunity may be found in cases where the State's consent to suit in federal court, though not explicitly stated in the relevant statutory or constitutional text, is shown " 'by such overwhelming implication from [that] text as [will] leave no room for any other reasonable construction.' " *Feeney*, 495 U.S. at 305–06, 110 S.Ct. at 1872–73 (quoting *Atascadero State Hosp.*, 473 U.S. at 239–40, 105 S.Ct. at 3145–46). It could be argued that when the State enacts a statute such as § 143–300.6(a), which imposes a monetary obligation upon itself, it implicitly consents to be sued to enforce that obligation. Indeed, the North Carolina Supreme Court has used similar reasoning to hold that whenever the State enters into a valid contract, it implicitly waives its sovereign immunity in its own courts with respect to actions for breach of that contract. *Smith v. State*, 289 N.C. 303, 222 S.E.2d 412, 423–24 (1976). Under *Smith*, it is entirely possible that the North Carolina courts might read § 143–300.6(a) as waiving the State's immunity from suit in its own courts with respect to actions to enforce the payment obligation it creates. But the question here is whether § 143–300.6(a) waives the State's *Eleventh Amendment* immunity from suit in federal court, and it is settled that a State does not waive its Eleventh Amendment immunity merely by consenting to suit in its own courts. *See Feeney*, 495 U.S. at 306, 110 S.Ct. at 1873; *Florida Dept. of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981).

We are unaware of any authority for the proposition that a waiver of Eleventh Amendment immunity can be based on statutory or constitutional provisions that do not expressly authorize *some* sort of suit against

the State. *Cf. Edelman*, 415 U.S. at 674, 94 S.Ct. at 1360 (statute which "by its terms did not authorize suit against anyone" could not waive Eleventh Amendment immunity). Indeed, the Supreme Court repeatedly has refused to hold that a State's agreement to administer federal funds in accordance with certain standards implicitly waives its Eleventh Amendment immunity with respect to actions seeking to enforce those standards against it, absent an explicit agreement to consent to such suits. *See Edelman*, 415 U.S. at 673–74, 94 S.Ct. at 1360–61; *Florida Dept. of Health & Rehab. Servs.*, 450 U.S. at 150, 101 S.Ct. at 1034. As the Court has explained, such notions of "implied" or "constructive" consent are "not ... commonly associated with the surrender of constitutional rights" and have "no place" in Eleventh Amendment waiver doctrine. *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360. And the lower federal courts uniformly have held that statutes requiring the State to pay judgments rendered in official-capacity actions against their employees—including statutes virtually identical to those at issue here—do not even waive the State's Eleventh Amendment immunity with respect to official-capacity actions within their scope,[5] much less with respect to entirely separate actions against the State to enforce the indemnification obligation thus created. For these reasons, we conclude that whatever the text of Article 31A as a whole may imply about the State's willingness to allow the payment obligation created by § 143–300.6(a) to be enforced against it in its own courts, the implication that it is willing to permit that obligation to be enforced against it in federal court is not so "overwhelming" as to permit a finding of Eleventh Amendment waiver.

civil action ... shall be paid as an expense of administration up to the limit provided in the Tort Claims Act.

We think this statute suffers from precisely the same defect as Article 31A: while it may obligate the State to pay certain judgments rendered against its employees, it does not indicate that the State is consenting to be sued to enforce that obligation.

5. *See, e.g., Burk v. Beene*, 948 F.2d 489, 493–94 (8th Cir.1991); *Williams v. Bennett*, 689 F.2d

1370, 1376–79 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *United States v. DCS Development Corp.*, 590 F.Supp. 1117, 1120–21 (W.D.N.Y.1984); *Ragosta v. Vermont*, 556 F.Supp. 220, 224 (D.Vt.1981), *aff'd*, 697 F.2d 296 (2d Cir.1982); *Space Age Prods., Inc. v. Gilliam*, 488 F.Supp. 775, 778–80 (D.Del.1980); *Carreras Roena v. Camara de Comerciantes Mayoristas, Inc.*, 440 F.Supp. 217, 219–21 (D.P.R.1976), *aff'd*, 559 F.2d 1201 (1st Cir. 1977).

Barfield contends, however, that the Supreme Court's most recent Eleventh Amendment waiver decision, *Feeney*, compels a finding of waiver here. We disagree. *Feeney* held that a statutory consent-to-suit provision that standing alone might have been insufficient to waive the State's Eleventh Amendment immunity *could* constitute such a waiver when read together with a venue provision in the same statute which "clearly indicated" that the state intended its consent to suit to extend to suits in federal court. 495 U.S. at 306–08, 110 S.Ct. at 1873–74. In *Feeney*, however, it was plain that the State intended to consent to *some* suits against itself, for the statute explicitly provided that the State "consent[s] to suits, actions, or proceedings of any form or nature at law, in equity or otherwise," against the particular state agency. *Id.* at 306, 110 S.Ct. at 1873. As the Court pointed out, this provision sufficiently established that the State had "expressly consented to suit in expansive terms," and the only uncertainty was whether that consent to suit was intended to extend to suits in federal as well as state court. *Id.* Here, by contrast, we have no indication that the State is consenting to be sued *in any forum*, let alone a federal one. Accordingly, the *Feeney* rule that ambiguities as to the scope of a general consent-to-suit provision may be cured by reference to other parts of the same statute is of no relevance.

▆▆▆ Barfield suggests finally that a decision that § 143–300.6(a) does not waive the State's Eleventh Amendment immunity with respect to actions seeking to enforce the obligation it creates would render that provision "meaningless" and therefore could not reflect legislative intent. We are not persuaded by this argument. In the first place, as explained earlier, there is the real likelihood that the obligation created by § 143–300.6(a) could be enforced against the State in its own courts. *Cf. Smith v. State, supra.*

And more critically, the Supreme Court has emphasized that ambiguous statutory provisions may be read as waiving Eleventh Amendment immunity only when there is no other "reasonable construction" of those provisions, so that the choice is between finding a waiver and "giving the provision[s] no meaning at all." *Feeney*, 495 U.S. at 308, 110 S.Ct. at 1874. Our refusal to read § 143–300.6(a) as waiving the State's Eleventh Amendment immunity with respect to actions to enforce the payment obligation it creates will not result in the section having "no meaning at all." To the contrary, it will continue to impose upon the State an explicit duty to indemnify its employees against certain liabilities, which we can presume the State will honor. The fact that this duty might have more value to state employees if it could be enforced in federal court is not a sufficient justification for finding a waiver of Eleventh Amendment immunity that does not otherwise exist. As the Supreme Court has stated, "considerations of policy cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State." *Pennhurst*, 465 U.S. at 123, 104 S.Ct. at 920; *see Missouri v. Fiske*, 290 U.S. at 25–26, 54 S.Ct. at 20–21 ("Considerations of convenience open no avenue of escape from the [Amendment's] restriction"). Arguments that the duty imposed by § 143–300.6(a) would be more meaningful if it could be enforced in federal court are therefore more properly addressed to the state legislature, which possesses the power to waive the State's Eleventh Amendment immunity, rather than to the federal courts, which do not.

▆▆▆ In short, we conclude that the statutory provisions relied upon by Barfield are insufficient to establish an express waiver of the State's Eleventh Amendment immunity under controlling Supreme Court precedent.[6]

---

6. As a final matter, we reject any suggestion that the State waived its Eleventh Amendment immunity with respect to Barfield's claim against it by voluntarily intervening in this action. Under certain circumstances, a state named as a defendant in an action in federal court may waive its Eleventh Amendment immunity by voluntarily making a *general* appearance in that action and

defending it on the merits. See 13 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3524 & n. 75 (1984 & Supp.1993) (citing cases). But we can find no authority suggesting that a state named as a defendant in such an action will waive its Eleventh Amendment immunity by making a *special* appearance for the limited purpose of contesting

Nor do we think there is any basis for concluding that Congress has abrogated the State's Eleventh Amendment immunity with respect to such claims as that here in issue. While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, *see Dellmuth v. Muth,* 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989), it has long been settled that 42 U.S.C. § 1983, which is the ultimate basis for Barfield's claim here, does not effect such an abrogation. *See Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Since Barfield has pointed to no other federal statute that might conceivably abrogate the State's Eleventh Amendment immunity with respect to this claim, we conclude that the Eleventh Amendment problem here cannot be overcome by a finding of congressional abrogation.

### III

In conclusion, we hold that the claim that Barfield asserted against the Secretary in the Rule 69 supplementary proceeding was one against the State for purposes of the Eleventh Amendment, and that there is no basis for finding either waiver or abrogation of the State's Eleventh Amendment immunity with respect to that claim. Accordingly, the district court lacked jurisdiction to entertain that claim, much less to grant relief based on it. We must therefore reverse its judgment and remand with directions to dismiss, without prejudice, the supplementary proceedings against the Secretary.

*SO ORDERED.*

the federal court's jurisdiction over it, and we think such a rule would be flatly inconsistent with settled law on the waiver of jurisdictional defenses. In this case, the State moved to intervene only after it had been ordered to pay part of the judgment entered in the action, and it made very clear that it was seeking to intervene only for the limited purpose of contesting the court's jurisdiction to enter such an order against it. Under these circumstances, we do not think its intervention can be considered a waiver of its Eleventh Amendment immunity.