FILED

NOT FOR PUBLICATION

FEB 06 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-17-1031-LKuF |
| ) | |
| REZA FATEH MANESH, ) | Bk. No.   1:15-bk-12563-VK |
| ) | |
| Debtor. ) | Adv. No.  1:15-ap-01237-VK |
| _____ ) | |
| ) | |
| HOSSEIN FATEHMANESH, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| DAVID SEROR, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on January 25, 2018
at Pasadena, California

Filed – February 6, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria Kaufman, Bankruptcy Judge, Presiding
_____

Appearances:   Appellant Hossein Fatehmanesh argued pro se;
Richard D. Burstein of Brutzkus Gubner Rozansky
Seror Weber LLP argued for Appellee David Seror.
_____

Before:   LAFFERTY, KURTZ, and FARIS, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

The issue in this appeal is the ownership of commercial real property located in Van Nuys, California (the "Delano Property") as of July 31, 2015, the date Debtor filed his bankruptcy petition. After Appellant Hossein Fatehmanesh ("Hossein"), Debtor's brother, purchased the Delano Property in 1998, he conveyed the property via quitclaim deed to the Debtor's future wife, Shahla Tehrani Broomand ("Shahla"). Later, as part of a settlement of litigation brought by Hossein against Debtor and Shahla, the parties agreed that Debtor and Shahla owned the Delano Property. In 2014, Shahla quitclaimed 79.4 percent of her interest in the Delano Property to Hossein, but the quitclaim deed was not immediately recorded. Next, in March 2015, the Los Angeles County Superior Court entered a default judgment in an action brought by a creditor of the Debtor against Debtor and Shahla; that judgment declared that the property had been held by Shahla since 2006 as trustee of a resulting trust for Debtor's benefit and that Debtor was the equitable owner (the "Resulting Trust Judgment"). Shortly after entry of the Resulting Trust Judgment, Hossein recorded the quitclaim deed from Shahla. Thus, as of the petition date, record title to the Delano Property was in the names of Hossein and Shahla.

After Debtor filed for chapter 7[1] relief, the trustee, Appellee David Seror ("Trustee"), filed an adversary proceeding against Hossein seeking turnover of the Delano Property as an

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

asset of the estate. Hossein argued that he owned the Delano Property, pointing out that it was titled in his name, that he had, for at least some period of time, paid the mortgage, property taxes, and insurance, and that he had held himself out as an owner. He contended he was not bound by the Resulting Trust Judgment because he was not a party to that litigation. The bankruptcy court disagreed, finding that Hossein was in privity with Shahla and was thus bound by the superior court judgment under principles of issue preclusion. The bankruptcy court thus found that the property was property of the estate subject to turnover.

After trial, the bankruptcy court entered judgment for the Trustee and against Hossein, ordering turnover of the property and postpetition rents collected and held by Debtor or Hossein. The court also awarded the Trustee his attorney's fees as a sanction for Hossein's violation of the automatic stay. We find no error of fact or law or abuse of discretion in the bankruptcy court's rulings. Accordingly, we AFFIRM.

**FACTS**

**A.   Pre-petition events**

Hossein purchased the Delano Property in 1998. On August 6, 1999, Hossein executed a quitclaim deed conveying his interest in the Delano Property to Shahla, who married Debtor in 2012. The quitclaim deed was recorded on August 13, 1999.

In April 2001, even though the Delano Property was titled in Shahla's name, Debtor and Hossein entered into an agreement for Debtor to purchase from Hossein the Delano Property and the business located thereon for $90,000. The agreement called for a

-3-

$10,000 down payment, with the balance due by August 31, 2001 and monthly interest to be paid in the interim. The agreement provided that if the buyer could not pay the purchase price, the "seller [Hossein] has the full right to the ownership of the business and [the Delano Property]."

Debtor defaulted on the payments due under the agreement, and on March 2, 2005, Hossein filed a complaint against Debtor, Shahla, and others[2] in Los Angeles County Superior Court seeking specific performance of the purchase agreement and to quiet title, as well as damages for breach of contract, fraud, and forgery (the "Specific Performance Litigation"). The complaint alleged, among other things, that Debtor and Shahla had forged Hossein's signature on quitclaim deeds, including the August 1999 quitclaim deed conveying the Delano Property to Shahla.[3]

The parties settled the Specific Performance Litigation.[4] They agreed that Debtor and Shahla would pay $175,000 to Hossein; the partnership would be severed; and defendants would keep the partnership business and the Delano Property. It was originally intended that the settlement funds would be paid out of a pending escrow for the sale of the Delano Property, but that sale fell

---

[2]The other named defendants were Abdolreza Ilkhani and United Escrow. The record does not indicate how the claims against those parties were resolved.

[3]The complaint also alleged that Debtor and Shahla were married at the time of the alleged forgery. At trial, however, Hossein testified that the couple were not married until 2012.

[4]Although other defendants were named in the complaint, the Specific Performance Judgment indicates that the only defendants who participated in the settlement conference were Debtor and Shahla.

-4-

through. The superior court entered a judgment (the "Specific Performance Judgment") on June 1, 2007, which ordered:

> that judgment be entered for the sum of $175,000.00 pursuant to the terms of the settlement stipulated to by defendants and plaintiff as follows: Defendants jointly and severally shall pay to plaintiff the sum of $175,000.00. If not paid sooner, the judgment shall be paid directly from escrow from the sale of the property and/or business located at 14520 Delano Street, Van Nuys, CA. The parties' partnership is severed. Defendants[] shall keep the partnership business and real property located at 14520 Delano Street, Van Nuys, CA, legally described as Lot 13, Block 37, Tract 1200, Book 10, Page 35 of the records of the Los Angeles County Recorder, subject to all encumbrances thereto. The parties shall each bear their own costs.

Several years later, in September 2014, Shahla executed a quitclaim deed purporting to transfer 79.4 percent of the Delano Property to Hossein (the "2014 Quitclaim Deed").[5] The 2014 Quitclaim Deed was not recorded until July 21, 2015, shortly before Debtor filed the instant chapter 7 case.

Soon after the execution of the 2014 Quitclaim Deed, Reza Pour, one of Debtor's judgment creditors, filed a complaint in superior court against Debtor and Shahla seeking a judgment declaring Debtor the sole owner of the Delano Property (the "Resulting Trust Complaint"). Pour recorded a lis pendens against the Delano Property on October 7, 2014 and served it on Debtor and Shahla at several addresses, including the Delano Property.

On March 19, 2015, the superior court entered a default

_____

[5]The 2014 Quitclaim Deed included a notation that no documentary transfer tax was due because the conveyance was to secure a debt. At trial, Hossein testified that he had inserted that language, but it was not clear from the record what debt was intended to be "secured" by the 2014 Quitclaim Deed.

judgment based on the Resulting Trust Complaint (the "Resulting Trust Judgment"). The Resulting Trust Judgment states:

> With regard to the [Delano Property] . . . as of April 19, 2006 when plaintiff's Amended Abstract of Judgment ("Judgment Lien") arising out of a legal action filed in Los Angeles County Superior Court entitled <u>Reza Pour v. Reza Fatehmanesh</u>, Los Angeles Superior Court Case No. BC075569, was recorded: (a) defendant [Shahla] held title to the Delano Property as trustee of a resulting trust for the benefit of defendant [Debtor], (b) that defendant [Debtor] was the equitable owner of the Delano Property, (c) defendant [Shahla] had no valid right, title, or interest in the Delano Property and (d) the Delano Property was and is thereby subject to plaintiff's Judgment Lien against defendant [Debtor] as of said date (April 19, 2006).

At trial in the adversary proceeding, Debtor testified that he was not personally served with the Resulting Trust Complaint because he was in Iran. Debtor testified, however, that he returned to the United States in December 2014 and learned about the Resulting Trust Complaint, months before entry of the Resulting Trust Judgment, and that he had received a copy of the Resulting Trust Complaint from Hossein. Debtor also testified that on July 29, 2015, he and Shahla, through counsel, unsuccessfully moved to vacate the Resulting Trust Judgment.

On July 21, 2015, after entry of the Resulting Trust Judgment and shortly before Debtor and Shahla moved to vacate it, Hossein recorded the 2014 Quitclaim Deed.

**B. Post-Petition Events**

On July 31, 2015, Debtor filed the instant chapter 7 case, and Trustee was appointed. Debtor initially listed the Delano Property on Schedule A with the notation that Shahla owned a 20 percent separate interest but that he did not own any interest. Debtor listed on Schedule D a debt to First Bank secured by the

-6-

Delano Property, indicating that Shahla owed this debt. Debtor claimed an exemption in the Delano Property on Schedule C. Debtor listed no income on Schedule I; the only income listed in Debtor's Statement of Financial Affairs ("SOFA") was rental income attributed to Shahla.

Debtor filed an amended Schedule D and amended SOFA on October 30, 2015. In the amended Schedule D, Debtor indicated he did not have any secured creditors; in the amended SOFA he omitted the rental income attributed to Shahla and stated that he had not received any year-to-date income or any income in the preceding two years.

A few days later, Debtor appeared at his § 341 meeting. Hossein was also present. Debtor testified that the Delano Property was rented to an automobile repair shop, was generating rental income, and had generated $15,000 of postpetition rent and security deposits. According to the parties' Joint Pretrial Stipulation, Debtor and Hossein agreed to meet with the Trustee and bring a cashier's check for $15,000. According to the Trustee's testimony at trial, when they appeared at the Trustee's office the next day, they told the Trustee that they had decided not to bring a check because Debtor did not have any interest in the Delano Property.

On November 5, 2015, the Trustee filed a motion for turnover in the main bankruptcy case requesting that the court order Debtor to turn over the Delano Property and its related income and security deposits. On the same day, the Trustee filed the adversary proceeding against Hossein (discussed below) that is the subject of this appeal.

-7-

Approximately two weeks after the Trustee filed the motion for turnover and the adversary proceeding, Debtor again amended his schedules. Amended Schedule A indicated that he owned the Delano Property in fee simple; amended Schedule C claimed an exemption in the Delano Property, and amended Schedule D listed First Bank and Pour as secured creditors with liens against the Delano Property and no longer attributed these debts to Shahla. Debtor's amended Schedule I showed $4,425.11 in monthly net rental income, and the amended SOFA listed $26,167.05 in year-to-date rental income for 2015, $10,326 in rental income for 2014, and $4,399 in rental income for 2013; again, the SOFA no longer attributed the rental income to Shahla. The same day, Debtor filed a motion to convert the bankruptcy case to chapter 13.

On December 21, 2015, the bankruptcy court granted the Trustee's motion for turnover as to Debtor. The order granting the motion instructed Debtor to turn over the Delano Property and all related security deposits and postpetition rent. A few weeks later, on January 15, 2016, the bankruptcy court denied Debtor's motion to convert.[6]

_____

[6]The Trustee objected to conversion on grounds of bad faith, and the bankruptcy court held a hearing on the motion on January 7, 2016. The bankruptcy court agreed with the Trustee that Debtor had acted in bad faith in concealing his interest in the Delano Property and related income and not amending his schedules and SOFA until after the Trustee had moved for turnover. The order denying conversion was not appealed.

In addition, on February 23, 2016, the United States Trustee filed an adversary proceeding seeking revocation of Debtor's discharge on grounds of false oath, knowing and fraudulent failure to deliver property to the trustee, and refusal to obey a
(continued...)

About six months later, Debtor again amended Schedule A/B. Although he listed the Delano Property, Debtor stated, "Debtor disputes any ownership in the [Delano] property. Debtor believes prior attorney . . . mischaracterized the [Delano] property. Debtor [is] aware of the Courts [sic] position on turnover."

**C.    The Trustee's Adversary Proceeding against Hossein**

The Trustee's complaint against Hossein sought turnover of the Delano Property and the associated postpetition rents and an accounting. The Trustee also sought contempt sanctions under § 105(a) for Hossein's intentional refusal to turn over the postpetition rents in violation of the automatic stay. Hossein took the position that he was the rightful owner of the Delano Property and its income based on the 2014 Quitclaim Deed and the fact that Hossein was not a party to Pour's state court action which lead to the Resulting Trust Judgment.

A one-day trial was held on November 29, 2016. Hossein, Debtor, and the Trustee each testified. Thereafter, the bankruptcy court issued its findings and conclusions and a judgment in favor of the Trustee. Hossein timely appealed.[7]

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(E). We have jurisdiction under 28 U.S.C.

---

[6](...continued)
lawful order of the court. The matter was resolved by entry of a stipulated judgment on June 2, 2016, under which Debtor agreed to revocation of his discharge.

[7]After this appeal was filed, on March 31, 2017, the bankruptcy court awarded the Trustee $92,811.50 in attorney's fees and $3,015.25 in costs. Hossein did not appeal that order.

§ 158.

## ISSUES

Whether the bankruptcy court erred in concluding that the Delano Property was property of the estate.

Whether the bankruptcy court abused its discretion in awarding the Trustee his attorney's fees under § 105(a) for Hossein's violation of the automatic stay.

## STANDARDS OF REVIEW

We review the bankruptcy court's legal conclusions de novo and its factual determinations for clear error. Banks v. Gill Distrib. Centers, Inc. (In re Banks), 263 F.3d 862, 867 (9th Cir. 2001).

We review de novo the bankruptcy court's determination that issue preclusion was available. Plyam v. Precision Dev., LLC (In re Plyam), 530 B.R. 456, 461 (9th Cir. BAP 2015). If issue preclusion was available, we review the bankruptcy court's application of the doctrine for abuse of discretion. Id. Whether property is property of the bankruptcy estate is also a question of law that we review de novo. Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010).

A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 577 (1985)). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson, 470 U.S. at 574; see also Hinkson, 585 F.3d at 1260 (recognizing the rule that a trial court's

-10-

choice between two permissible views of the weight of evidence is not clearly erroneous where the evidence would support a conclusion either way, citing United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949)). When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting Anderson, 470 U.S. at 575).

We review a bankruptcy court's imposition of civil contempt sanctions under § 105 for violation of the automatic stay for an abuse of discretion. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

**A.    The bankruptcy court did not err in concluding that the Delano Property was property of the estate.**

The bankruptcy court ruled that the Delano Property and its postpetition proceeds were property of the estate based on its conclusions that (1) the Specific Performance Judgment terminated any interest Hossein may have had in the Delano Property; (2) the Resulting Trust Judgment conclusively established that Debtor was the equitable owner of the Delano Property as of the petition

-11-

date, and under full faith and credit and the <u>Rooker-Feldman</u> doctrine, the court could not reconsider or look behind the Resulting Trust Judgment; and (3) Hossein was bound by the Resulting Trust Judgment under the doctrine of issue preclusion.

On appeal, Hossein argues that the bankruptcy court erred in all of these conclusions. Hossein contends that he owns the Property because he is on title, is obligated on the note and deed of trust encumbering the Delano Property, has paid the property taxes and insurance, and has held himself out as the owner. He argues that there was no evidence presented at trial to support the conclusion that Debtor was the equitable owner of the Delano Property, and that the Resulting Trust Judgment was inadmissible at trial on relevance grounds.[8] Hossein also lists several disputed factual findings in his statement of issues (discussed below) but does not substantively address those findings in his brief.

**1. Burden of Proof**

In the bankruptcy court, the parties disputed which burden of proof should apply to the issue of ownership of the Delano Property. The Trustee contended that the preponderance of the evidence standard under California Evidence Code § 115 applied.[9] Hossein argued that under California Evidence Code § 662, the

---

[8]The bankruptcy court overruled counsel's relevance objection at trial. On appeal, Hossein has asserted no substantive argument as to why that ruling was in error.

[9]That statute provides: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

clear and convincing standard was appropriate.[10] The bankruptcy court agreed with Hossein and concluded that California Evidence Code § 662 applied but found that the Trustee had shown by clear and convincing evidence that Debtor held equitable title to the Delano Property on the petition date.

On appeal, Hossein argues that the bankruptcy court erred in applying the preponderance of the evidence standard of California Evidence Code § 115, but this argument misconstrues the bankruptcy court's ruling. In any event, we need not decide whether the bankruptcy court correctly chose to apply the clear and convincing standard because the Trustee's evidence satisfied that standard. See FreecycleSunnyvale v. The Freecycle Network, 626 F.3d 509, 515 (9th Cir. 2010).

> **2. The bankruptcy court did not err in finding that the Specific Performance Judgment terminated Hossein's interest in the Delano Property.**

Hossein lists as an issue on appeal whether the court committed reversible error in determining that the Specific Performance Judgment terminated Hossein's interest in the Delano Property. He does not, however, address this issue in his opening brief and has thus waived the argument. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999). In any event, the record reflects no error in the bankruptcy court's conclusion. The evidence showed that at the time the Specific Performance Complaint was filed, record title was in Shahla's name. Hossein

---

[10]That statute provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

-13-

alleged in that complaint that the 2001 purchase agreement conveyed the Delano Property to Debtor, and the Specific Performance Judgment provided that "defendants," which included Debtor, would keep the Delano Property. Nothing in the Specific Performance Judgment stated or implied that Hossein had any interest, and no evidence was presented at trial that Hossein thereafter held any interest in the Delano Property until the 2014 Quitclaim Deed was executed.

**3. The bankruptcy court did not err in giving issue preclusive effect to the Resulting Trust Judgment.**

The bankruptcy court found that the Resulting Trust Judgment was entitled to issue preclusive effect in the adversary proceeding, barring Hossein from disputing that Shahla held the Delano Property in a resulting trust for Debtor's benefit. In its analysis, the bankruptcy court correctly applied California preclusion law. See In re Plyam, 530 B.R. at 462 (bankruptcy court must apply the forum state's law of issue preclusion in relying on the preclusive effect of a state court judgment).

The requirements for issue preclusion in California are:

(1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding;

(2) the issue was actually litigated in the former proceeding;

(3) the issue was necessarily decided in the former proceeding;

(4) the decision in the former proceeding is final and on the merits;

(5) the party against whom preclusion is sought was the same

-14-

as, or in privity with, the party to the former proceeding; and (6) application of preclusion furthers the public policies underlying the doctrine. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001) (citing Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990)).

In California, issue preclusion may apply to a default judgment so long as (1) the defendant had actual notice of the proceedings and a full and fair opportunity to litigate; and (2) the material factual issues were raised in the pleadings, submitted to the court for determination, and the court actually determined the issues. Id. at 1247.

Examining each element in turn, we agree with the bankruptcy court that the Resulting Trust Judgment was entitled to issue preclusive effect in the adversary proceeding.

**Identical issue.** The issue decided by the Resulting Trust Judgment was the ownership of the Delano Property, which was also the salient issue in the adversary proceeding. Hossein nevertheless argues that the issues are not identical. This argument seems to be premised upon the fact that the Trustee sued for turnover under § 542, which was not a claim in the resulting trust litigation. While that fact might matter for purposes of claim preclusion, it is irrelevant for purposes of issue preclusion. See DKN Holdings LLC v. Faerber, 61 Cal. 4th 813, 824 (2015) ("Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."). This element was met.

**Actually litigated.** Hossein does not dispute that the ownership issue was actually litigated in the resulting trust

-15-

litigation. Nevertheless, because the Resulting Trust Judgment was a default judgment, we must examine whether the defendant (1) had actual notice of the proceedings and a full and fair opportunity to litigate; and (2) the material factual issues were raised in the pleadings, submitted to the court for determination, and the court actually determined the issues.

In connection with its privity analysis, the bankruptcy court found that Debtor had actual notice of the resulting trust complaint. Although the pleadings underlying the Resulting Trust Judgment are not in the record, that judgment contains sufficient detail for the bankruptcy court to have concluded that the material factual issues were presented and decided by the state court, and Hossein does not argue otherwise.

**Necessarily decided.** It is undisputed that the ownership of the Delano Property was necessarily decided by the Resulting Trust Judgment.

**Final and on the merits.** It is undisputed that the Resulting Trust Judgment was final and on the merits.

**Identical parties or parties in privity.** Hossein argues that issue preclusion does not apply to the Resulting Trust Judgment because neither the Trustee nor Hossein were parties to that litigation. However, as the bankruptcy court noted, the party or privity requirement applies only to the party **against** whom preclusion is sought, which in this case was Hossein. Thus, the fact that the Trustee was not a party in the state court was irrelevant.

Hossein also disagrees with the bankruptcy court's conclusions that (i) he was in privity with Shahla and

-16-

(ii) application of issue preclusion based on privity was fair. We find no error in the bankruptcy court's conclusion that Hossein was in privity with Shahla.

> The concept of privity for the purposes of . . . collateral estoppel refers to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights and . . . to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is sufficiently close so as to justify application of the doctrine of collateral estoppel. . . . This requirement of identity of parties or privity is a requirement of due process of law.

Rodgers v. Sargent Controls & Aerospace, 136 Cal. App. 4th 82, 90-91 (2006) (citations omitted). "In the final analysis, the determination of privity depends upon the fairness of binding a party to the present proceeding with the result obtained in earlier proceedings in which it did not participate." Gottlieb v. Kest, 141 Cal. App. 4th 110, 150 (2006). See also Bailey v. Safeway, Inc., 199 Cal. App. 4th 206, 213 (2011) (collateral estoppel is an equitable concept based on fundamental principles of fairness; even if a party is in privity with another, application of the doctrine is not warranted unless the fundamental principle of fairness underlying the doctrine will be served by its application).

Legal relationships that may result in a finding of privity include grantor and grantee. See Bailey, 199 Cal. App. 4th at 212-13. The parties do not dispute that Shahla and Hossein had a grantor-grantee relationship arising out of the 2014 Quitclaim Deed, and Hossein does not dispute the bankruptcy court's finding that his and Shahla's interests were mutual and successive based on the 2014 Quitclaim Deed.

As for fairness and due process, the bankruptcy court considered the relevant standard:

> Due process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the . . . party in the first action. The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication.

Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n, 60 Cal. App. 4th 1053, 1070 (1998) (citations omitted). Adequate representation means that the interests of the party against whom issue preclusion is sought "are so similar to a party's interest that the latter was the former's virtual representative in the earlier action." Gottlieb, 141 Cal. App. 4th at 150. The trial court must examine "whether the . . . party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that . . . party had a strong motive to assert that interest." Id. If the interests of those parties are likely to have been divergent, or if a party's motive for asserting a common interest is relatively weak, adequate representation should not be inferred. Id.

The bankruptcy court correctly found that Hossein's and Shahla's interests were similar enough for Shahla to have been Hossein's "virtual representative" in the state court litigation: both parties had the incentive to defend their title to the Delano Property, as losing that litigation would (and did) reduce the equity in the Delano Property by subjecting it to the Pour judgment lien.

The bankruptcy court also concluded that the evidence showed Shahla had had a full and fair opportunity to represent her

-18-

interests in the resulting trust litigation. Although Debtor testified that he was not served with the Resulting Trust Complaint, he testified that he received a copy of that complaint from Hossein in December 2014, three months before the state court entered the Resulting Trust Judgment.[11] The bankruptcy court also found that Hossein was aware of the Resulting Trust Complaint. More importantly, Shahla and Debtor, through counsel, eventually participated in the litigation by filing a motion to vacate the Resulting Trust Judgment, which was denied.[12]

Based on these findings, the bankruptcy court concluded that applying issue preclusion would not infringe on Hossein's due process rights, and it was fair to find that he was in privity with Shahla. Although Hossein protests this conclusion as unsupported by the evidence, he points to no specific factual or legal error in the court's conclusion, and we have found none.

**Public policy.** Finally, the bankruptcy court determined that application of issue preclusion would further the public policies behind the doctrine. It determined that relitigating the issues already decided by the state court would reward a

---

[11]The bankruptcy court found Debtor's testimony not credible, given the inconsistencies in his testimony and his history of multiple inconsistent amendments to his bankruptcy schedules to suit the circumstances. The court did not specifically state which testimony it found not credible, but it is clear from its ruling that it generally did not find either Debtor or Hossein credible.

[12]The court stated in its findings and conclusions that Debtor testified that he and Shahla received the complaint. Debtor testified he received it, but he did not mention whether Shahla knew about it. Nevertheless, both Debtor and Shahla had an opportunity to defend the lawsuit when they moved to vacate the Resulting Trust Judgment.

party (Hossein) who (i) had secretly obtained the Delano Property from Shahla; (ii) was aware of the Resulting Trust Complaint but failed to take any action in state court; (iii) had recorded the 2014 Quitclaim Deed only when Debtor and Shahla were attempting to vacate the Resulting Trust Judgment; and (iv) had sought through Debtor's bankruptcy filing to stake a claim in the Delano Property in contravention of the Resulting Trust Judgment. The record supports these findings. We therefore find no abuse of discretion in the bankruptcy court's application of issue preclusion.

As the bankruptcy court found, giving issue preclusive effect to the Resulting Trust Judgment meant that the 2014 Quitclaim Deed conveyed to Hossein 79.4 percent of the interest Shahla held at the time – bare legal title as trustee for Debtor's benefit. Thus, as of the petition date, Shahla and Hossein held only bare legal title to the Delano Property, and Debtor held the equitable interest, which became property of the estate. Accordingly, turnover of the Delano Property and its postpetition proceeds was appropriate.

**4.    The bankruptcy court's application of the <u>Rooker-Feldman</u> doctrine was harmless error.**

The bankruptcy court recognized that it must give full faith and credit to the Resulting Trust Judgment. 28 U.S.C. § 1738. But the bankruptcy court took the additional step of applying the <u>Rooker-Feldman</u> doctrine in determining that it could not question the validity of the Resulting Trust Judgment. Hossein argues that the doctrine has no application here because neither party to the adversary proceeding was a party to the resulting trust

-20-

litigation. Hossein is correct.

Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction to review or reverse state court judgments. See Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). More recently, the Supreme Court has clarified that the Rooker-Feldman doctrine is a narrow, jurisdictional doctrine that does not supplant preclusion doctrines, which are not jurisdictional. See Lance v. Dennis, 546 U.S. 459, 466 (2006) ("Whatever the impact of privity principles on preclusion rules, Rooker–Feldman is not simply preclusion by another name."); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (holding that the Rooker-Feldman doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). See also Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103–04 (9th Cir. BAP 2007) (vacating and remanding summary judgment for plaintiff in part because bankruptcy court erroneously applied Rooker-Feldman in giving preclusive effect to a state court misappropriation judgment in a dischargeability proceeding). Here, no party to the state court litigation was attempting to reverse the state court judgment; accordingly, Rooker-Feldman did not apply.

Despite this error, the bankruptcy court correctly found that it must give full faith and credit to the Resulting Trust Judgment and that issue preclusion barred relitigation of the

-21-

ownership issue. Therefore, the erroneous application of the Rooker-Feldman doctrine did not affect the outcome and was thus harmless error, which we ignore. Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 355 (9th Cir. BAP 2012). See also Civil Rule 61, applicable via Rule 9005 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.")

**5. Hossein's evidence did not have any bearing on the issue of ownership of the Delano Property as of the petition date.**

At trial, Hossein presented evidence that he originally borrowed the funds to purchase the Delano Property and, from time to time, had paid the mortgage, taxes, and insurance, collected rents from tenants and deposited them into an account in his name; he also testified that he held himself out as the owner of the Delano Property in negotiating some leases. In his reply brief, Hossein focuses almost exclusively on this evidence, which might be relevant were the court deciding the ownership issue on a clean slate. But in light of the Resulting Trust Judgment, none of that evidence had any bearing on the issue of ownership of the Delano Property as of the petition date.

**6. The factual findings disputed by Hossein are either nonexistent or are supported by the record.**

Hossein listed in his statement of issues several disputed factual findings. As noted, Hossein did not elaborate on how these findings were in error and, for the most part, the disputed findings discussed below would have no bearing on the outcome of this appeal. In any event, Hossein assigns error to nonexistent findings, findings that he misinterpreted, and findings that were

supported by evidence.

Hossein purports to dispute the bankruptcy court's findings that (1) Hossein purchased the Property from Shahla through her agent, the Debtor; (2) Hossein sold the Property to Shahla in 2001; (3) Debtor paid the mortgage; and (4) the August 2014 transfer by Shahla to Hossein was fraudulent. The record, however, does not reflect that the bankruptcy court made any such findings.

Hossein also disputes the following findings for which there is evidence in the record: (1) Debtor was aware of the Resulting Trust Complaint three months before the Resulting Trust Judgment was entered; and (2) Debtor attended the 341 meeting and stated he was receiving rental income from the Property. The first of these findings was supported by Debtor's own testimony, and the second by Stipulated Fact No. 12 in the parties' Joint Pre-Trial Stipulation and Order, and the Trustee's testimony.

Additionally, Hossein disputes the bankruptcy court's findings that (1) Shahla secretly transferred 79.4 percent of her interest in the Property to Hossein; and (2) Hossein demanded payment (on the sales contract) from Debtor but not Shahla. Hossein seems to misinterpret these findings. The finding that Shahla "secretly" transferred a portion of her interest referred to the fact that the 2014 Quitclaim Deed was not recorded until several months after it was executed; during that time the transfer would have been "secret" to anyone searching title. As to the second "finding," it was not a finding but a statement of the allegations of the Specific Performance Complaint.

Finally, Hossein assigns error to the court's "failing to

-23-

recognize" that: (1) Hossein bought 79.4 percent of the Property in August 2014 from Shahla for valuable consideration; and (2) Hossein held a valid, enforceable lien on the Property when he sold it to Shahla. Hossein points to no evidence in the record to support these assertions.

Importantly, the bankruptcy court found Hossein's and Debtor's testimony not credible. Therefore, to the extent any of Hossein's arguments are based on that testimony, we must defer to the bankruptcy court. See In re Retz, 606 F.3d at 1196.

**B.    The bankruptcy court did not abuse its discretion in awarding the Trustee his attorney's fees and costs under § 105(a).**

In his complaint, the Trustee requested contempt sanctions under § 105(a) for Hossein's violation of the automatic stay in failing to turn over the postpetition rents.[13]

For the bankruptcy court to make a finding of contempt, the moving party must show "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." In re Dyer, 322 F.3d at 1190-91. The automatic stay qualifies as a specific and definite court order. Id. at 1191. Before imposing civil contempt sanctions for a violation of the automatic stay, the court must find that the defendant knew of

---

[13]Although § 362(h) authorizes compensatory and, where appropriate, punitive damages for violation of the automatic stay, such relief is available only to an "individual." The Trustee, however, is not an "individual" entitled to damages under that code section. In re Dyer, 322 F.3d at 1189 (citing Havelock v. Taxel (In re Pace), 67 F.3d 187, 192 (9th Cir. 1995)). Nevertheless, the Trustee may recover damages for a stay violation under § 105(a) as a sanction for ordinary civil contempt. Id.

the automatic stay and that his actions which violated the stay were intentional. Id. No finding of bad faith or a subjective intent to violate the stay is required. Id. Alternatively, civil contempt sanctions may be imposed where the defendant failed to remedy his stay violation after he learned of the stay. See Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1151-52 (9th Cir. 1996).

In finding that Hossein knew about the automatic stay, the bankruptcy court relied upon the complaint filed in the adversary proceeding, which included an allegation that "Debtor and Defendant knew of the automatic stay when they came to the Trustee's office and refused to turn over the Postpetition Rent." Because the complaint was served on Hossein and he filed an answer, the bankruptcy court found that he knew of the automatic stay and failed to remedy it thereafter. Although the bankruptcy court did not cite it, the parties' Joint Pre-Trial Stipulation and Order includes as an admitted fact that on October 29, 2015, the Trustee sent Hossein and Debtor, through counsel, a letter informing them that they were undertaking actions that were "unlawful attempts to exercise control over property of the Estate in violation of the automatic stay, and demanding immediate turnover . . . ." Hossein does not dispute that he thereafter refused to turn over the Delano Property and its postpetition proceeds. Accordingly, the bankruptcy court did not err in finding that Hossein willfully violated the automatic stay and in awarding the Trustee his attorney's fees and costs.

Hossein argues that there was no basis for the sanctions and that the Trustee should seek compensation from the estate. He

further argues that the court may not use its inherent power to take action otherwise prohibited by the Bankruptcy Code, but he does not elaborate or explain why the Ninth Circuit authority relied upon by the bankruptcy court and cited above does not control the outcome.  We find no abuse of discretion in the bankruptcy court's awarding of compensatory civil contempt sanctions under the facts presented here.

**CONCLUSION**

For the reasons explained above, we AFFIRM.