[No. A131349. First Dist., Div. Four. Sept. 15, 2011.]

JERRY BAILEY, Plaintiff and Appellant, v.
SAFEWAY, INC., Defendant and Respondent.

COUNSEL

Geoffrey Becker for Plaintiff and Appellant.

Gordon & Rees, Michael T. Lucey, Don Willenburg and Michael A. Laurenson for Defendant and Respondent.

OPINION

**RUVOLO, P. J.—**

## I.

## INTRODUCTION

After appellant Jerry Bailey (Bailey) suffered an eye injury when a bottle of Cook's Champagne exploded as he was erecting a sales display in one of

respondent Safeway, Inc.'s (Safeway), stores, Bailey sued the manufacturer of the champagne bottle, Saint-Gobain Containers, Inc. (Saint-Gobain), for strict liability design defect under the consumer expectation theory; Bailey also sued Safeway under that same theory and for negligence. Bailey settled with Saint-Gobain and others for $1 million plus an assignment of Saint-Gobain's equitable indemnity rights against Safeway. After the settlement was confirmed, the case went to trial only against Safeway. The jury found that Safeway was not negligent, but that it was liable under the separate strict liability design defect cause of action.

Thereafter, Bailey filed a separate complaint for equitable indemnity against Safeway as Saint-Gobain's assignee. The trial court sustained Safeway's demurrer without leave to amend, and Bailey has appealed the resultant judgment of dismissal.

█ Upon de novo review, we first conclude that, as an assignee of Saint-Gobain, Bailey is precluded under the doctrine of collateral estoppel from relitigating Safeway's negligence, and he is bound by the jury's determination on this issue. Based on that conclusion, we further hold that the manufacturer of a product found to be defectively designed cannot seek equitable indemnity against a retailer whose fault is based only on that same product liability theory.

Consequently, and after concluding that there was no abuse of discretion in failing to grant leave to amend, we affirm the judgment.

## II.

### FACTUAL AND PROCEDURAL HISTORY

On December 28, 2006, Bailey suffered an eye injury after a champagne bottle exploded while he was constructing a display of Cook's Champagne bottles at a Safeway store. Bailey filed a complaint against the bottle manufacturer Saint-Gobain, Safeway, and other related parties. Saint-Gobain then filed a cross-complaint against all defendants, including Safeway, alleging claims for implied indemnification, equitable indemnification, comparative indemnification, declaratory relief, and negligent spoliation of evidence. Subsequently, Saint-Gobain stipulated to dismiss its cause of action for negligent spoliation of evidence against Safeway.[1]

On October 22, 2008, Bailey settled with Saint-Gobain and all other defendants except Safeway for $1 million, plus an assignment of any and all

---

[1] This cause of action was based on the allegation that Safeway discarded the bottle after the accident, and before it could be examined.

equitable indemnity rights Saint-Gobain had against Safeway.[2] A motion for good faith settlement was made by Saint-Gobain pursuant to Code of Civil Procedure section 877.6, which was opposed by Safeway. In its motion, Saint-Gobain stated its understanding that, if the settlement were approved, Bailey intended to proceed against Safeway for negligence based on acts or omissions "that are separate and distinct from those related to the cause of the bottle exploding."

During the good faith settlement hearing, there was much discussion as to whether the settlement was unfair because Safeway was being abandoned by the manufacturer to defend a product designed and manufactured by Saint-Gobain. In response to a direct question by the court, Bailey's counsel denied that Bailey would limit his claim against Safeway at trial to negligence.[3]

On October 27, 2008, the court approved the settlement as being made in good faith. Saint-Gobain then dismissed its cross-complaint against all defendants.

The case between Bailey and Safeway went to trial, and on November 10, 2008, the jury found that the Cook's Champagne bottle that Safeway supplied to Bailey was defectively designed under the consumer expectations theory of products liability, and that this defect caused damages in the amount of $718,915.78. The jury also found that neither Safeway nor Saint-Gobain were negligent or "at fault." On January 14, 2009, Bailey and Safeway stipulated that the jury verdict ought to be modified to reflect that Safeway was 100 percent responsible for Bailey's injuries and damages under the consumer expectations theory of strict liability design defect. The trial court thereafter entered judgment in favor of Safeway because "the amount of the settlement with all of the other defendants exceed[ed] the amount [awarded to Bailey by] the special verdict."

On April 9, 2009, Bailey filed a separate lawsuit seeking equitable indemnity against Safeway, alleging that he had been assigned Saint-Gobain's indemnity rights as. part of the settlement. With respect to liability, Bailey alleged only that because Safeway litigated Saint-Gobain's liability under the consumer expectation theory and was found to be 100 percent at fault,

---

[2] The settlement agreement, which included the assignment of rights, has not been included as part of the record on appeal.

[3] On May 17, 2011, Bailey filed an unopposed motion requesting this court take judicial notice of the October 27, 2008 reporter's transcript of the hearing on Saint-Gobain's motion for good faith settlement. By order dated May 18, 2011, we deferred ruling on this motion until we considered the merits of this appeal. We now grant the motion for judicial notice after finding the transcript to be a proper subject of judicial notice (Evid. Code, § 452, subd. (d)(1)) and relevant to our determination on appeal.

Safeway was collaterally estopped from denying legal responsibility and from relitigating its degree of fault. On May 20, 2009, Safeway demurred on the grounds that Bailey failed to allege essential elements establishing a claim for equitable indemnity, and that the complaint failed to state a cause of action in that it was barred by res judicata based on the court's prior judgment.

After the trial court granted Safeway's request for judicial notice of the special verdict in the prior action, it sustained Safeway's demurrer without leave to amend on the ground that Bailey failed to state the necessary elements that constitute a cause of action for equitable indemnity. The trial court concluded that the jury's findings that the bottle was defective, but that Safeway was not negligent, precluded Bailey from pleading a cause of action for equitable indemnity because he could not establish that Safeway's conduct was a substantial factor in causing him harm. The court entered judgment on January 5, 2011. This timely appeal followed.

## III.

## DISCUSSION

### A. Standard of Review

On appeal from an order dismissing a complaint after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 998 [27 Cal.Rptr.3d 583].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded . . . [citations]" but do not "assume the truth of contentions, deductions or conclusions of law. [Citation.]" (*Aubry, supra,* 2 Cal.4th at p. 967.) We liberally construe the pleading with a view to substantial justice between the parties. (*Kotlar v. Hartford Fire Ins. Co.* (2000) 83 Cal.App.4th 1116, 1120 [100 Cal.Rptr.2d 246].) On appeal, we will affirm a "trial court's decision to sustain the demurrer [if it] was correct on any theory. [Citation.]" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736].) Thus, "we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]" (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757 [62 Cal.Rptr.2d 778].)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could

cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

### B. The Trial Court Properly Sustained Safeway's Demurrer

■ The right to indemnity flows from payment of a joint legal obligation on another's behalf. (*GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 426 [261 Cal.Rptr. 626] (*GEM Developers*).) Although product liability defendants are jointly and severally liable to the *plaintiff*, their liability as among themselves is determined according to *comparative equitable indemnity* principles. (*Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.* (2001) 86 Cal.App.4th 1135, 1139–1143 [103 Cal.Rptr.2d 895]; see *Gentry Construction Co. v. Superior Court* (1989) 212 Cal.App.3d 177 [260 Cal.Rptr. 421]; *GEM Developers, supra*, at p. 426.)

"The doctrine of comparative equitable indemnity is designed to do equity among defendants." (*GEM Developers, supra*, 213 Cal.App.3d at p. 426.) The purpose of equitable indemnification is to avoid the unfairness, under the theory of joint and several liability, of holding one defendant liable for the plaintiff's entire loss while allowing another potentially liable defendant to escape any financial responsibility for the loss. (*Ibid.*)

Bailey claims that the trial court erred in sustaining Safeway's demurrer because the jury's determination that Safeway was 100 percent responsible for Bailey's injuries entitles him, as assignee of Saint-Gobain's indemnity rights, to pursue a cause of action for equitable indemnity to "recover" all, or a portion of, the $1 million paid by Saint-Gobain to settle. At the same time, he contends that Safeway is barred by res judicata from relitigating its own liability.

■ Examining first how the jury's findings affect Bailey's rights as assignee of Saint-Gobain's indemnity rights, we conclude that Bailey is bound by these findings under principles of res judicata, and the subordinate doctrine of collateral estoppel. This is so, not only because he was an actual party to a judgment resulting from prior litigation, but also because he was in privity with the assignor Saint-Gobain, whose rights he now asserts. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223] (*Lucido*).) "Privity" in this context means a mutual or successive relationship to precisely the same right of property which can arise from such legal

relationships as testator and executor, ancestor and heir, *assignor and assignee*, grantor and grantee, and lessor and lessee. (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892]; *Estate of Hanson* (1954) 126 Cal.App.2d 71 [271 P.2d 563]; *U.S. v. Stull* (D.Conn. 1952) 105 F.Supp. 568, 571.)

■ Collateral estoppel, however, is an equitable concept based on fundamental principles of fairness. (*Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 942 [190 Cal.Rptr. 29].) For this reason, the fact alone that a party is in privity with another is not in itself sufficient to warrant application of collateral estoppel, unless the fundamental principle of fairness underlying the doctrine will be served by its application. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Here, in fairness, collateral estoppel should apply to preclude Bailey's indemnity action.

Bailey went to trial against Safeway asserting both a negligence and strict liability claim—a point emphasized by Bailey on appeal. The jury exonerated Safeway from negligence, and found it liable only for a design defect of Saint-Gobain's product. Bailey participated at trial, and did not argue below or on appeal that the issues of Safeway's negligence and its strict product design liability were not fully and fairly litigated by him. (*Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 98–99 [54 Cal.Rptr.3d 28] (*Bostick*).) Under these circumstances, Bailey's right to indemnity as Saint-Gobain's assignee can fairly be limited by the jury's finding that Safeway was not negligent. Because there was no negligence to provide a basis for equitable indemnity, we examine the principles of strict liability to determine if they provide an alternative basis.

■ The doctrine of strict products liability imposes fault on all participants in the chain of distribution of a defective product. (*Bostick, supra*, 147 Cal.App.4th at p. 88; *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897] (*Greenman*); *Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256, 262–263 [37 Cal.Rptr. 896, 391 P.2d 168] (*Vandermark*).) The primary justification for creating the strict products liability doctrine was " 'to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.' [Citation.]" (*Bostick, supra*, 147 Cal.App.4th at p. 88, quoting *Greenman, supra*, 59 Cal.2d at p. 63.) "*Vandermark* . . . , *supra*, 61 Cal.2d 256, extended strict liability for a defective product to retailers because they 'are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries . . . .' (*Id.* at p. 262 . . . .)" (*Bostick, supra*, 147 Cal.App.4th at p. 88, italics omitted.)

■ Under the doctrine of strict liability, liability may be premised upon a theory of design defect, manufacturing defect, or failure to warn. (*Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 995 [281 Cal.Rptr. 528, 810 P.2d 549].) Defective design may be established under two theories: (1) the consumer expectations test, which asks whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of danger inherent in the design. (*Id.* at p. 995; *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 432 [143 Cal.Rptr. 225, 573 P.2d 443].)

As we have noted, the jury's determination that Safeway was not negligent eliminated a claim of indemnity against Safeway based on any alleged independent act or omission. Therefore, Safeway's liability could only have been based on its role as retailer of the product the jury found to have been defectively designed by Saint-Gobain, the manufacturer. (*Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 632 [65 Cal.Rptr.2d 532] (*Wimberly*).) Thus, the jury imposed liability on Safeway irrespective of negligence or fault, but as a matter of social policy. (*Bostick, supra,* 147 Cal.App.4th at p. 93; *Wimberly, supra,* 56 Cal.App.4th at pp. 632–633.)

Bailey has not cited any authority, and we are unaware of any, which would allow the manufacturer of a product found to be defectively designed to obtain equitable indemnity against a retailer who did nothing more than offer the product for sale. Without any independent basis for finding the retailer at fault, and in light of the legal principles underlying the assignment of legal responsibility in this case, we conclude that Saint-Gobain, and its assignee Bailey, are not entitled to indemnity against Safeway.

We caution that our decision in no way suggests that equitable indemnity can never be based on strict liability. In his reply brief, Bailey alleges that "Safeway's supposition that the verdict does not create a cause of action because it does not demonstrate 'fault' is not supported by *GEM Developers* . . . wherein the court held that equitable indemnity may be based on strict liability." However, *GEM Developers* involved facts and circumstances substantially distinct from those in this case, making that decision inapposite here.

In *GEM Developers,* the court held that apportionment of liability on the basis of comparative fault may be appropriate not only in cases involving multiple negligent tortfeasors, but also in cases involving multiple tortfeasors who are strictly liable. (*GEM Developers, supra,* 213 Cal.App.3d at p. 426.) It reasoned that equitable indemnification is an extension of comparative fault principles which allows parties to seek a division of loss between the wrongdoers in proportion to their relative culpability. (*Id.* at pp. 426–427.)

*GEM Developers* involved two codevelopers, each of which allegedly committed separate, independent acts giving rise to each developer's strict liability: "Here, the theory of strict liability is that the developer 'manufactured' (graded) a 'product' (a finished residential lot) for ultimate sale to the public. It is alleged Hallcraft's product (the finished residential lot) was sold to the public along with a product manufactured by GEM (a condominium). In this situation, GEM can be viewed as a manufacturer of the condominium and a retailer not only of its own product (the structure) but also of Hallcraft's product (the lot). Logically, there is no reason to allow strict liability in the situation when the grader/manufacturer sells directly to the public but disallow it when the grader/manufacturer sells indirectly to the public through a developer/builder who sells a structure in addition to the grader/manufacturer's lot. In either case, the grader/manufacturer has produced a product for ultimate sale to the public. A number of cases have accepted this premise. [Citations.]" (*GEM Developers, supra*, 213 Cal.App.3d at p. 433, fns. omitted.)

■ The holding in *GEM Developers* does not alter our conclusion that the jury's determination that Safeway was not negligent eliminates Bailey's claim of indemnity against Safeway. Unlike the *GEM Developers* case, where the indemnitor and indemnitee each produced a "product," which were combined and sold to the public, in this case Safeway's liability was not based on its independent acts or omissions, but was based solely on its role as retailer of Saint-Gobain's defectively designed product. As a matter of fundamental fairness, a manufacturer (here, Bailey, as the manufacturer's assignee), cannot seek equitable indemnification from a retailer found not to have been negligent or independently at fault, but found to be liable solely under the strict liability theory of design defect. Under these limited circumstances the retailer is not "at fault" within the meaning of a cause of action for equitable indemnification. (See *Bostick, supra*, 147 Cal.App.4th at p. 93.)

We also reject Bailey's related contention that Safeway cannot escape indemnification because Safeway was found to have been 100 percent liable for Bailey's loss at trial, and the collateral estoppel doctrine prevents Safeway from relitigating its degree of fault. In connection with this argument, *Bostick* is instructive.

In *Bostick*, a patron of Gold's Gym, Inc. (Gold's), was injured while using gym equipment manufactured by Flex Equipment Company, Inc. (Flex). While the case was being tried, but before its conclusion, the plaintiff settled with Gold's. The jury returned a verdict against Flex, finding it to be 90 percent at fault. The jury also found the plaintiff 10 percent at fault, and "other entities" zero percent at fault. (*Bostick, supra*, 147 Cal.App.4th at p. 86.)

In a subsequent indemnity action brought by Gold's against Flex, Gold's was granted judgment on the pleadings after the trial court agreed that the jury's finding of zero percent of fault attributed to "other entities" collaterally estopped Flex from contending, in its defense, that Gold's was at fault. (*Bostick, supra*, 147 Cal.App.4th at p. 96.)

The Court of Appeal reversed, concluding that the jury's finding did not have preclusive effect in the indemnity action between Gold's and Flex. It reasoned that because Flex and Gold's did not fully and fairly litigate the issue of Gold's comparative fault as adversaries, the jury's finding that the percentage of fault attributable to other entities was zero could not be binding on Flex: "As explained in part 2, *ante*, the rule is that those in the same chain of distribution of a defective product are jointly and severally liable to an injured plaintiff for all compensable economic and noneconomic damages caused by the defective product, notwithstanding Proposition 51. [Citation.] Under that rule of law, Flex's liability to Bostick is not reduced by the comparative fault of Gold's Gym. Instead, Flex is liable to Bostick for all economic and noneconomic damages suffered, reduced only in proportion to Bostick's comparative fault [citation]. For this reason, even before Gold's Gym was dismissed as a defendant, Flex had no meaningful incentive for purposes of the action on the complaint to adjudicate the issue of Gold's Gym's comparative fault," the issue was not "actually litigated," and collateral estoppel did not apply. (*Bostick, supra*, 147 Cal.App.4th at p. 98.)

"Moreover, Gold's Gym's potential liability for a product defect or failure to warn under the strict products liability doctrine also inculpated Flex as a participant in the same chain of distribution. Any effort by Flex to establish Gold's Gym's liability on those theories undermined Flex's own defense and provided no discernible benefit for Flex." (*Bostick, supra*, 147 Cal.App.4th at p. 98.)

The same reasoning applies with equal force here. As to the strict liability claim, Safeway was left at trial to defend Saint-Gobain's product design. It made no sense whatsoever for Safeway to assert that Saint-Gobain was liable in strict liability in its own defense of that claim or the negligence claim, because, as a "downstream" entity in the chain of commerce, Safeway was answerable in damages for Saint-Gobain's design liability to the same degree as the manufacturer.[4]

---

[4] The court in *Bostick* also referred to the trial record which confirmed its logical conclusion that Flex had no meaningful incentive to assert Gold's liability at trial, and thus the issue was not "fully and fairly litigated." (*Bostick, supra*, 147 Cal.App.4th at pp. 98–99.) In our case, Bailey's record on appeal contains virtually nothing concerning the trial between himself and Safeway except the verdict form and subsequent judgment, which were forwarded by counsel under letter dated April 2, 2011, after the record had been prepared. Neither these materials,

Therefore, we conclude that Bailey cannot raise the stipulated finding that Safeway was 100 percent responsible for his injuries as a bar to Safeway's defense against Bailey's indemnity claim. The stipulation assigned fault under the consumer expectations theory of design defect, which is a matter of strict liability. (*Bostick, supra*, 147 Cal.App.4th at p. 88.) It is clear from the record and both parties' briefs that any other language in the jury findings was intended only to support this verdict.

### C. There Is no Reasonable Possibility That the Complaint Can Be Amended to State a Cause of Action

While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review, the granting of leave to amend involves an exercise of the trial court's discretion. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) The burden of showing abuse of discretion rests upon the appellant and where an appellant does not indicate, either in the trial court or in this court, the manner in which the complaint is proposed to be amended, an abuse of discretion is not shown. (*Hilton v. Board of Supervisors* (1970) 7 Cal.App.3d 708, 716 [86 Cal.Rptr. 754]; *Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 976 [125 Cal.Rptr.2d 115].)

■ "The elements of a cause of action for indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible. [Citation.]" (*Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc., supra*, 86 Cal.App.4th at p. 1139, italics omitted.) Nowhere in Bailey's complaint does he allege actual "fault" on the part of Safeway or state why Safeway should, in equity, be responsible for part of the damages.

As we have already discussed in detail, the determination that Safeway's liability was based only on a finding that the bottle was defectively designed, and not on an independent fault basis, prevented Bailey from pleading a cause of action for equitable indemnity based on negligence. Presumably, if there existed any independent theory of liability other than negligence to

nor Bailey's 13 pages of combined appellate briefs, sheds light on what actually happened at trial. As the appellant and the party seeking to assert collateral estoppel, it is Bailey's burden to demonstrate that Safeway fully and fairly litigated Saint-Gobain's liability in the trial. (*Lucido, supra*, 51 Cal.3d at p. 341.) Moreover, if the parties actually had "fully and fairly" litigated Saint-Gobain's liability, the jury's verdict finding Safeway strictly liable but not Saint-Gobain would have been fatally defective requiring a new trial. (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 357–358 [112 Cal.Rptr.3d 455]; *Oxford v. Foster Wheeler LLC* (2009) 177 Cal.App.4th 700, 713 [99 Cal.Rptr.3d 418]; *Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 304 [96 Cal.Rptr.2d 605].)

support his claim that Safeway could be found at fault, Bailey would have pled it or at least articulated that claim. Since he did not do so, he has effectively conceded that Safeway was only secondarily liable and without independent "fault." Instead, Bailey merely requests that "[i]f the court believes that a cause of action was not stated, one can be and leave to amend ought to have been granted."

In light of the fact that Bailey has failed to indicate how his complaint for equitable indemnification can be amended to state a proper cause of action, he has failed to meet his burden of showing that the trial court abused its discretion in sustaining Safeway's demurrer without leave to amend.

## IV.

## DISPOSITION

The judgment is affirmed.

Sepulveda, J., and Rivera, J., concurred.

A petition for a rehearing was denied October 5, 2011, and appellant's petition for review by the Supreme Court was denied November 30, 2011, S197442.