Filed 8/27/24  U.S. TelePacific Holdings v. Honeywell International CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| U.S. TELEPACIFIC HOLDINGS CORP., <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> HONEYWELL INTERNATIONAL, INC., <br><br> Cross-defendant and Respondent. | H051348 <br> (Santa Clara County <br> Super. Ct. No. 19CV349010) |

U.S. TelePacific Holdings Corp. used a Honeywell International, Inc. filter in its plumbing system.  The filter failed on a Saturday, causing a leak that continued until the next morning.  A neighboring business, A-1 Trading, Inc., sued TelePacific to recover alleged damages resulting from the leak, and TelePacific cross-complained against Honeywell seeking equitable indemnification and contribution.  Reasoning that TelePacific had not and could not allege that Honeywell owed A-1 Trading any duty, the trial court sustained Honeywell's demurrer to TelePacific's claims without leave to amend.  We reverse the resulting judgment in Honeywell's favor.

## I.  BACKGROUND

A-1 Trading sued TelePacific, alleging that TelePacific's negligent use or maintenance of the plumbing system in TelePacific's rental unit caused a plumbing failure that damaged A-1 Trading's adjacent unit and disrupted A-1 Trading's business.

TelePacific cross-complained against Honeywell.  The original cross-complaint, prepared on Judicial Council Form PLD-PI-002, lacked case-specific factual allegations articulating the basis for TelePacific's claims, so Honeywell secured dismissal with leave to amend with facts showing Honeywell was at fault.

TelePacific filed a first amended cross-complaint—pleading causes of action for equitable indemnity, contribution, and declaratory relief—in which it incorporated by reference A-1 Trading's complaint (without admitting the truth of A-1 Trading's allegations).  It noted A-1 Trading's allegation "that on or about June 2, 2018[,] a failure in the plumbing system at [TelePacific's] place of business . . . resulted in a flooding event that caused damage to A-1 Trading, Inc.'s business" (some capitalization omitted) and alleged that a Honeywell water filter failed, "caus[ing] or contribut[ing] to the flooding" alleged in A-1 Trading's complaint.

TelePacific attributed the water filter's failure to Honeywell's design defect, manufacturing defect, failure to warn, and negligence.  TelePacific alleged that Honeywell was "responsible, in whole or in part, for the damages allegedly sustained by . . . A-1 Trading . . . as a result of the flooding event alleged in [A-1 Trading's] complaint."[1]  (Some capitalization omitted.)  TelePacific denied its own liability to A-1 Trading but alleged that each cause of action in its cross-complaint would arise if TelePacific were found liable to A-1 Trading:  (1) Honeywell would be required to equitably indemnify TelePacific if TelePacific were "found in some manner responsible to [A-1 Trading] as a result of the incidences and occurrences alleged in" A-1 Trading's complaint; (2) TelePacific would be entitled to a contribution from Honeywell if were "judged liable to [A-1 Trading]"; and (3) declaratory relief was appropriate to resolve a

_____

[1] A-1 Trading alleged estimated damages in excess of $1.3 million, including damage to its showroom and product inventory.  TelePacific alleged that the flood caused by Honeywell's filter caused the damages A-1 Trading "allegedly sustained."

2

present dispute over TelePacific's right to indemnification or contribution if TelePacific were found liable to A-1 Trading and if judgment were entered in A-1 Trading's favor.

Honeywell again demurred. Honeywell argued that the first amended cross-complaint as a whole was barred by the doctrine of laches and was uncertain, but it also argued as to each cause of action that TelePacific failed to state facts sufficient to constitute a cause of action because TelePacific did not allege A-1 Trading suffered harm attributable to Honeywell.[2] In its written opposition, TelePacific did not expressly address Honeywell's contention that the factual allegations were insufficient to state a claim. But TelePacific noted its allegation that the failure of Honeywell's water filter caused the flooding event, argued that its allegations apprised Honeywell of the basis for its claims, and asked the court to "den[y]" Honeywell's demurrer in "its entirety."

The trial court sustained the demurrer to all three causes of action in the cross-complaint without leave to amend. The trial court reasoned that TelePacific irremediably failed to allege facts giving rise to a tort duty owed by Honeywell to A-1 Trading.

After unsuccessfully moving for relief under Code of Civil Procedure section 473, subdivision (b), TelePacific prematurely appealed.[3] We deemed the notice of appeal to be taken from the later entry of judgment.

## II. DISCUSSION

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under

---

[2] Honeywell argued more broadly that TelePacific's equitable indemnity allegations were deficient because they did not supply a basis to hold Honeywell liable for A-1 Trading's harm, but we are unable to identify a challenge to TelePacific's negligence theory other than Honeywell's contention that A-1 Trading's harm was not "properly attributable" to Honeywell. Honeywell also challenged the contribution and declaratory relief causes of action as premature.

[3] Undesignated statutory references are to the Code of Civil Procedure.

3

any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) In the exercise of our independent judgment, "we accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).) We review the judgment, not the trial court's reasoning, and "must affirm . . . if any of the grounds stated in the demurrer is well taken." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111 (*Fremont Indemnity*); see also *Brinsmead v. Elk Grove Unified School Dist.* (2023) 95 Cal.App.5th 583, 587 (*Brinsmead*) ["We affirm if any proper ground for sustaining the demurrer exists even if the trial court did so on an improper ground"].) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment," but "[t]he burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

As we will explain, TelePacific's allegations are sufficient to state a claim for equitable indemnity. Because that claim is viable, so is TelePacific's claim for declaratory relief. But TelePacific's cause of action for contribution is premature, so it is properly dismissed only without prejudice.

### 1. First Cause of Action—Equitable Indemnity

#### a. Essential Elements

Generally, indemnification "refers to 'the obligation resting on one party to make good a loss or damage another party has incurred.' " (*Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, 1157 (*Prince*).) Traditional equitable indemnity is not "available 'in the absence of a joint legal obligation to the injured party' " (*Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 573 (*Jocer*)), but traditional

4

equitable indemnity " 'does not invariably follow fault' " (*Prince*, at p. 1158).[4]  "A key restrictive feature of traditional equitable indemnity is that, on matters of substantive law, the doctrine is 'wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available' against the injured party.  [Citations.]  This rule 'is often expressed in the shorthand phrase ". . . there can be no indemnity without liability." ' " (*Id.* at pp. 1158–1159, fn. omitted; see also *Jocer*, at pp. 573–574.)  The doctrine is based on fairness; " '[t]he basis for [equitable] indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay.' " (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 108.)

" '[A] defendant may pursue a comparative equitable indemnity claim against other tortfeasors either (1) by filing a cross-complaint in the original tort action or (2) by filing a separate indemnity action after paying more than its proportionate share of the damages through the satisfaction of a judgment or through a payment in settlement.' " (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1209 (*Greystone*), quoting *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1197–1198; see also *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 607 (*American Motorcycle*); § 428.10, subd. (b).)

Courts have distilled two elements of a cause of action for indemnity:  " '(1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible.' " (*Bailey v. Safeway, Inc.* (2011) 199 Cal.App.4th 206, 217 (*Bailey*).)

Focusing on these general elements, TelePacific seems to argue that it is not required to allege that Honeywell owed a duty to the injured party because that

---

[4] Traditional equitable indemnity is distinct from implied contractual indemnity, a form of equitable indemnity that is premised on a contractual relationship.  (See *Prince*, *supra*, 45 Cal.4th at pp. 1157–1158.)

requirement is not specified in the elements.[5]  But Honeywell's "equitabl[e] responsib[ility]" is included in the elements—Honeywell is only equitably responsible if Honeywell and TelePacific share " 'a joint legal obligation' " to A-1 Trading.  (*Bailey*, *supra*, 199 Cal.App.4th at p. 217; *Jocer*, *supra*, 183 Cal.App.4th at p. 573.)  Whether Honeywell owed a duty of care to A-1 trading is therefore an appropriate inquiry.  " ' " '[T]here can be no indemnity without liability,' " ' . . . [and] the indemnitee and the indemnitor must share liability for the injury."  (*Ibid.*)

### b.    *Forfeiture*

Honeywell contends that TelePacific forfeited any argument that its allegations sufficiently pleaded that Honeywell owed any tort duty to A-1 Trading.  We disagree.

First, Honeywell argues that TelePacific forfeited the issue by failing to explain in its opposition to Honeywell's demurrer how TelePacific's factual allegations showed that Honeywell owed A-1 Trading any duty of care.  But the sufficiency of the factual allegations presents a pure question of law, and in reviewing an order sustaining a general demurrer without leave to amend, we consider " 'any possible legal theory,' " including "legal theor[ies] presented for the first time in an opening appellant's brief" or "first raised by the reviewing court."  (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1244–1245; see also *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870 ["we determine de novo whether the complaint states facts sufficient to state a cause of action under any possible legal theory" and "are not limited to plaintiffs' theory of recovery or ' "form of action" ' pled in testing the sufficiency of the complaint"].)  In contrast, Honeywell has cited no authority supporting its argument that

---

[5] TelePacific may instead be arguing that it need not separately allege the legal conclusion that Honeywell owed a duty to A-1 Trading.  We are satisfied that the first amended cross-complaint discloses that TelePacific's equitable indemnity claim is based on theories of negligence and products liability premised on duties Honeywell owed to A-1 Trading.

TelePacific is foreclosed from addressing the issue of duty because it was not specifically addressed in its opposition brief.

And it is not apparent that Honeywell disputed duty in its demurrer or reply to TelePacific's opposition. The first overt suggestion that TelePacific had not adequately pleaded duty was in the trial court's tentative ruling, the day before the hearing on the demurrer. In response to the tentative ruling, TelePacific argued that Honeywell owed a duty to A-1 Trading.[6]

Second, Honeywell suggests that TelePacific forfeited the contention that Honeywell owed a duty to A-1 Trading on the facts alleged by failing to support the proposition through argument in its opening brief. Honeywell misreads the brief: TelePacific argued, with citation to authority, that the duty issue turns on " 'the existence of a duty to use due care toward an interest of another that enjoys a legal protection against unintentional invasion' " and that Honeywell owed such a duty to A-1 Trading because A-1 Trading was foreseeably injured by the failure of Honeywell's water filter. Honeywell may not find those arguments compelling, but they adequately raised the issue.[7] (See generally Cal. Rules of Court, rule 8.204(a)(1)(B).)

---

[6] We think it prudent, when writing in opposition to a demurrer that argues the facts are insufficient to state a claim, to explain to the trial court why the facts are sufficient. True, Honeywell did not address duty in its moving papers, but TelePacific largely left the trial court to guess at TelePacific's potential arguments in defense of its allegations.

[7] Honeywell did not in its own appellate brief explain why the facts TelePacific alleged, or could allege, are insufficient to demonstrate that Honeywell owed A-1 Trading a duty of care. Nor did Honeywell ever make such an argument in the trial court. After we invited supplemental briefing, Honeywell offered only that A-1 Trading's injuries were not foreseeable because Honeywell had no way of knowing how and where its water filter would be used, where A-1 Trading has no connection to Honeywell except its proximity to a third party using Honeywell's product.

7

### c. *Honeywell's Underlying Tort Liability to A-1 Trading*

"The familiar elements of a negligence cause of action are duty, breach, causation, and damages." (*Gilead Tenofovir Cases* (2024) 98 Cal.App.5th 911, 920, review granted May 1, 2024, S283862 (*Gilead*); see also *Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1103.) "[A] plaintiff may recover under the doctrine of negligence for harm caused by a product otherwise subject to the doctrine of strict liability, notwithstanding the plaintiff's inability to prove a product defect." (*Gilead*, at p. 926, review granted.) Similar to a negligence claim, a strict liability claim for a defective product requires a causal connection between the defect and the plaintiff's injury. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 560 [explaining strict liability for "a defect in the manufacture or design of [a] product [that] causes injury while the product is being used in a reasonably foreseeable way"]; *Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 995 [explaining that "[s]trict liability has been invoked for . . . manufacturing defects, design defects, and . . . failures to warn"].) As explained below, TelePacific's factual allegations are sufficient for the first cause of action to withstand demurrer.

We begin with duty, the focus of both the trial court and the parties' appellate briefing. " 'Whether a duty exists is a question of law.' " (*Gilead*, *supra*, 98 Cal.App.5th at p. 920, review granted.) "In California, the 'general rule' is that people owe a duty of care to avoid causing harm to others and that they are thus usually liable for injuries their negligence inflicts. [Citation.] Under Civil Code section 1714, subdivision (a), '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.' So at least in cases involving traditionally compensable forms of injury—like physical harm to person or property—we presume the defendant owed the plaintiff a duty of care and then ask whether the circumstances 'justify a departure' from that usual

8

presumption." (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 398 (*Southern California Gas*).)

Accepting TelePacific's factual allegations, Honeywell owed A-1 Trading a duty to exercise ordinary care so as not to physically harm A-1 Trading's property. TelePacific alleged that Honeywell's negligence relating to the nylon casing of its water filter caused a leak that became the flood that allegedly damaged A-1 Trading. If Honeywell's negligence caused physical damage to A-1 Trading's property, then Honeywell presumptively owed A-1 Trading a duty of care. (See *Southern California Gas*, *supra*, 7 Cal.5th at p. 398.) The record divulges no basis to depart from the usual presumption here.

Factors relevant to whether a departure from the usual presumption may be warranted include without limitation: "(1) 'the foreseeability of harm to the plaintiff,' (2) 'the degree of certainty that the plaintiff suffered injury,' (3) 'the closeness of the connection between the defendant's conduct and the injury suffered,' (4) 'the moral blame attached to the defendant's conduct,' (5) 'the policy of preventing future harm,' (6) 'the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach,' and (7) 'the availability, cost, and prevalence of insurance for the risk involved.' " (*Southern California Gas*, *supra*, 7 Cal.5th at pp. 398–399, quoting *Rowland v. Christian* (1968) 69 Cal.2d 108, 113.) That said, "the inquiry hinges not on mere rote application of these separate so-called *Rowland* factors, but instead on a comprehensive look at ' " ' "the sum total" ' " ' of the policy considerations at play in the context before us." (*Southern California Gas*, at p. 399.)

Although Honeywell disputes whether harm to A-1 Trading was foreseeable, the case TelePacific has pleaded is not one where an unforeseeable chain of events combined to cause an injury. (Cf. *Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1070–1071 [collecting cases].) At the pleading stage, we take as true that Honeywell sold a water

9

filter that failed in ordinary use and was a substantial factor causing flooding, without considering whether TelePacific will be able to substantiate these well-pleaded facts. And the nature of flooding waters being to pass through all but waterproof barriers, it was foreseeable that A-1 Trading's adjacent unit would be affected by flooding at TelePacific's.[8] Neither the asserted fact that Honeywell did not know where its water filter would be installed nor the absence of privity between Honeywell and A-1 Trading exempts Honeywell as a matter of law from liability to entities whose property was physically damaged by the leakage.[9]

Turning to the causation issue Honeywell raised in its briefing to the trial court, TelePacific plainly alleged that Honeywell breached its duty of ordinary care through negligence relating to the water filter, and that the breach was a substantial factor in causing the flooding event that allegedly injured A-1 Trading. (See CACI No. 3800.)

To the extent Honeywell has challenged TelePacific's allegations of A-1 Trading's damages, TelePacific's allegations are sufficient. We note that Honeywell itself, in its appellate brief, states that the flooding damaged A-1 Trading. TelePacific, which still contests its own liability to A-1 Trading, does not in its allegations concede the fact of A-1 Trading's damages. Instead, TelePacific alleges that A-1 Trading claims damages and that Honeywell shares responsibility for any alleged damages, if TelePacific is responsible at all. We know of no authority requiring a defendant to admit the plaintiff's

---

[8] Honeywell's bare contention that it could not foresee how or where its water filter would be used warrants no deference on a demurrer. (See *Yvanova*, *supra*, 62 Cal.4th at p. 924.) From the facts properly pleaded and taken as true, it is reasonable to infer that Honeywell designed its water filter to filter water in a plumbing system.

[9] Nothing herein forecloses the trial court from revisiting the duty issue on a more complete factual record. (See *Gilead*, *supra*, 98 Cal.App.5th at p. 948, review granted [holding that "Gilead . . . failed to establish that [a proposed] exception [was] warranted on the" record before the court at summary judgment, but explaining that the court's "conclusion does not prevent Gilead from seeking the exception based on a record developed later in the trial court"].)

damages before the defendant may cross-complain for indemnification against a concurrent tortfeasor not otherwise a party. (See *American Motorcycle*, *supra*, 20 Cal.3d at p. 607.)[10]  This is unsurprising:  allowing alleged tortfeasors to bring alleged joint tortfeasors into an action before trial without compromising a potential defense increases the likelihood that all claims arising out of a single event can be resolved by a single factfinder in a single trial.  Even if the indemnity question cannot appropriately be included in a trial on the plaintiff's claims, " 'the trial court retains the authority to postpone the trial of the indemnity question' " notwithstanding the filing of a cross-complaint.  (See *Paragon Real Estate Group of San Francisco, Inc. v. Hansen* (2009) 178 Cal.App.4th 177, 183.)  In this context, TelePacific's allegation that Honeywell caused A-1 Trading's alleged damages—together with TelePacific's incorporation of A-1 Trading's complaint for reference—is enough to allege Honeywell's shared responsibility for A-1 Trading's alleged injury.

### 2. *Second Cause of Action—Apportionment of Fault and Contribution*

Neither TelePacific nor Honeywell has articulated any functional distinction between the first and second causes of action, and we perceive none.  TelePacific's first cause of action depends on Honeywell's equitable obligation to indemnify TelePacific for A-1 Trading's damages flowing from Honeywell's tortious conduct.  TelePacific's second cause of action incorporates the preceding allegations and summarily asserts that if TelePacific is found liable, Honeywell will be responsible to contribute due to its negligence or fault.  As pleaded, both causes of action rely on the same historical facts as a basis for the same remedy, but the first is properly framed as a prejudgment equitable indemnity cross-claim whereas the latter is framed as a premature and redundant effort to

---

[10] As a practical matter, TelePacific states that it would amend its cross-complaint to allege the fact of A-1 Trading's damage if required to do so.

11

secure indemnification after a judgment. (See *Greystone*, *supra*, 168 Cal.App.4th at p. 1209.)

TelePacific defends its second cause of action as a statutory contribution claim under section 875, subdivision (c) or Civil Code section 1432. A statutory right to contribution under section 875, subdivision (a), arises "[w]here a money judgment has been rendered jointly against two or more defendants in a tort action" but, under subdivision (c), it may only be enforced "after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof." Similarly, Civil Code section 1432 provides for "proportionate contribution from all the parties joined with" a party to a joint obligation "who satisfies more than [its] share of the claim." (See *State Ready Mix, Inc. v. Moffatt & Nichol* (2015) 232 Cal.App.4th 1227, 1235, fn. 4.)

There is no such judgment here. TelePacific concedes that its second cause of action "can only come into existence in the future, after a judgment finding both . . . TelePacific and Honeywell jointly liable to [A-1 Trading]." A-1 Trading has not sued Honeywell, and nothing in the record suggests that TelePacific's allegations have inspired A-1 Trading to reconsider its decision to sue only TelePacific. We acknowledge, however, the theoretical possibility that the statutory conditions might someday be met. So in upholding the dismissal of the second cause of action, we do so without prejudice to TelePacific's right to bring a new contribution claim if circumstances permit it to plead satisfaction of the statutory conditions.

### 3. *Third Cause of Action—Declaratory Relief*

Through the third cause of action, TelePacific reframes its first two causes of action as a request for declaratory relief[11] by requesting a declaration that it is entitled to

---

[11] "[D]eclaratory relief is an equitable remedy and need not be awarded if the circumstances do not warrant." (*Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 930.) To evaluate the propriety of declaratory relief, courts consider "whether 'a probable future dispute over legal rights between parties is sufficiently ripe

the relief it is seeking under the first two causes of action. "To qualify for declaratory relief, [a party must] demonstrate its action present[s] two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582.) A trial court may dismiss a declaratory relief claim at the demurrer stage where it is " 'wholly derivative' " of a deficient cause of action. (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 191–192.)

The trial court dismissed the claim on the ground that it depended on the first two causes of action, both of which the court deemed deficient, and Honeywell argues that we should affirm on the same basis. But having determined in our independent judgment that the first cause of action was properly pleaded, we have no basis to reject the declaratory relief cause of action. (See generally *Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1119 [permitting claims for equitable indemnity and declaratory relief to proceed together].)

For the first time on appeal, Honeywell argues that the declaratory relief cause of action "was drafted contrary to the [o]rder of the court" sustaining Honeywell's initial demurrer with leave to amend because there was no declaratory relief cause of action in the original cross-complaint. (See *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1022–1023 [upholding demurrer ruling dismissing cause of action that was beyond the scope of leave to amend]; *Community Water Coalition v. Santa Cruz County Local Agency Formation Com.* (2011) 200 Cal.App.4th 1317, 1329 [affirming order striking new cause of action that was beyond the scope of the order permitting amendment because "it was 'not drawn or filed in conformity with . . . an order of the court' "]; but see *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1015 [allowing

_____

to represent an "actual controversy" within the meaning of the statute authorizing declaratory relief' " and " '[w]hether such [an] actual controversy merits declaratory relief as necessary and proper.' " (*Ibid.*, italics omitted.)

13

amendment adding new declaratory relief cause of action where it "directly responds to the court's reason for sustaining the earlier demurrer"].)  This line of argument is not properly before us.  Our review extends to the statutory grounds for a demurrer that Honeywell asserted in the trial court—failure to state a claim and uncertainty.  (See *Fremont Indemnity*, *supra*, 148 Cal.App.4th at p. 111 [explaining that judgment is upheld "if it is correct on any [§ 430.10] ground stated in the demurrer"].)  Even if we may consider grounds that Honeywell did not raise in the trial court, Honeywell has not tethered its appellate contention to any of the permissible statutory grounds for a demurrer.  (See § 430.10.)[12]

### 4.        *Alternate Grounds for the Demurrer*

We briefly address Honeywell's alternate grounds for demurrer—laches and uncertainty.  The trial court rejected both, and Honeywell reasserts neither in responding to TelePacific's appeal.  Although we are to affirm if the trial court correctly sustained the demurrer, even if on an improper ground, "a defendant 'who has advanced multiple theories in support of a demurrer . . . may be deemed to have abandoned those theories by failing to reassert them on appeal.' " (*Brinsmead*, *supra*, 95 Cal.App.5th at p. 587.)  But abandoned or not, neither theory is viable.

"Laches may be raised by demurrer, but only if the complaint shows on its face unreasonable delay plus prejudice or acquiescence." (*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 362, italics omitted.)  Assuming the first amended cross-complaint shows unreasonable delay, nothing in it suggests either prejudice to Honeywell or acquiescence by TelePacific.

---

[12] TelePacific notes that its original prayer for relief included a request for "a judicial determination that [Honeywell was] the legal cause of any injuries or damages sustained by [A-1 Trading] and that [Honeywell] indemnify [TelePacific], either completely or partially, for any sums of money which may be recovered against me by plaintiff."

14

Demurrers for uncertainty are "disfavored" and "strictly construe[d] . . . because ambiguities can reasonably be clarified under modern rules of discovery." (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1135; see also *Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292 [" ' "demurrers for uncertainty are disfavored, and are granted only if the pleading is so incomprehensible that a defendant cannot reasonably respond" ' "].) Honeywell argued in the trial court that the demurrer was uncertain because TelePacific "appear[ed] to attempt to allege a theory of [s]trict [l]iability" but reading the first amended cross-complaint left this ambiguous. But to the extent we understand Honeywell's theory of uncertainty, the allegations adequately reflect that TelePacific predicates its claim for indemnity on both negligence and strict liability theories.[13]

### III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to vacate the January 10, 2023 order sustaining Honeywell's demurrer without leave to amend and to enter a new order that (1) overrules the demurrer as to the first and third causes of action; and (2) sustains the demurrer to the second cause of action without prejudice. In the interests of justice, the parties shall bear their own costs on appeal.

---

[13] Because there is a reasonable possibility that TelePacific can state a claim for indemnity under its negligence theory, we do not pass on the substantive sufficiency of its strict liability theory.

_____

LIE, J.


WE CONCUR:


_____

GREENWOOD, P. J.


_____

GROVER, J.


*U.S. TelePacific Holdings Corp. v. Honeywell International, Inc.*
H051348